FILED
CLERK
2:02 pm, May 22, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ALVARO AVILA PICHARDO,

      Petitioner,
  -v-

UNITED STATES OF AMERICA,

      Respondent.
--------------------------------------------------------X

Case No. 14-cr-389 (SFJ)
(Related Case No. 15-cv-6609 (SJF))
**Order**

FEUERSTEIN, S., Senior District Judge:

I.    Introduction

Before the Court is Petitioner's § 2255 motion to vacate, set aside, or correct his sentence of 43 months' incarceration followed by three years' supervised release after he pled guilty to a single count indictment of being a deported felon who illegally re-entered the County (hereafter, the "Motion"). (*See* ECF No. 27; *see also* ECF No.37 (hereafter, the "Supplemental Motion").[1]) The Government opposes the Motion. (*See* ECF 29 (hereafter the "Opp'n"); *see also* ECF No. 44 (hereafter, "Supplemental Opposition" or "Supp. Opp'n").) For the following reasons, the Motion is denied.

II.    Background[2]

In March 1993, Petitioner, a Guatemalan citizen, was convicted in New York state court of Robbery in the First Degree, in violation of N.Y. Penal Law § 160.15, an aggravated felony

---

[1] The Court finds the Supplemental Motion subsumes the Motion. Unless otherwise noted, for convenience, the Motion and Supplemental Motion shall be referred to in the singular, *i.e.*, the "Motion".

[2] The Court relies on the Petitioner's Sentencing Memorandum (*see* ECF No. 19 (filed under seal)), the Presentence Report ("PSR") (*see* ECF No. 18 (filed under seal)), and the Government's Opposition (*see* ECF No. 29) and Supplemental Opposition in reciting the relevant background to the present Motion.

(hereafter, "NY 1st Degree Robbery"). After serving a sentence of more than eleven years, on August 8, 2003, Petitioner was removed from the United States.

On June 12, 2014, Petitioner was found in Freeport, New York by ICE[3] officials, who arrested him. On July 10, 2014, in a one-count indictment, a grand jury charged Petitioner with illegal reentry into the Country. Petitioner entered a guilty plea before the magistrate judge on November 3, 2014 (*see* ECF No. 15; *see also* ECF No. 16 (Transcript of Guilty Plea (hereafter, "Plea Tr."))), which was accepted by the undersigned on March 25, 2015 (*see* ECF No. 20).

Prior to his sentencing, the Probation Department prepared a PSR regarding Petitioner, relying upon, *inter alia*, the Sentencing Guidelines, in particular, § 2L1.2, entitled "Unlawfully Entering or Remaining in the United States" (hereafter, the "Illegal Entrant Guideline"). (*See* ECF No. 18 (sealed).) Pursuant to the Illegal Entrant Guideline, Petitioner's base offense level was an eight (8), which was subject to increase "[i]f the defendant previously was deported, or unlawfully remained in the United States after . . . a conviction for a felony that [was, *inter alia,*] a crime of violence . . . ." Illegal Entrant Guideline, § 2L1.2(b)(1)(A). According to an accompanying Application Note, "crime of violence" includes "robbery". *See* Guideline § 2L1.2, Commentary, Application Note 1(B)(iii). Thus, because of his prior NY 1st Degree Robbery conviction and in accordance with the Illegal Entrant Guideline, Petitioner's offense level was increased 16 levels. (*See* PSR, ¶10.) The Probation Department calculated Petitioner's Guideline imprisonment range to be 46 to 57 months. (PSR, ¶ 47.)

---

[3] "ICE" is the commonly used acronym for "U.S. Immigration and Customs Enforcement," the federal law enforcement agency tasked with, among other things, the enforcement of the immigration laws of the United States. *See, e.g.*, U.S. Immigration and Customs Enforcement, "What We Do" (May 14, 2019), https://www.ice.gov.

Thereafter, Petitioner's counsel, Randi Chavis, Esq., of the Federal Defenders of New York (hereafter, "Chavis"), filed a Sentencing Memorandum stating, *inter alia*:

> The advisory guideline range as calculated in the Pre-Sentence Report (PSR) is 46 to 57 months. The estimated guideline range in the plea agreement is 41 to 51 months. I write to urge the Court to impose a sentence within the estimated guideline range as such a sentence would be "sufficient but not greater than necessary" to comply with 18 USC §3553(a).

(ECF No. 19 at 1.) Chavis asked that the Court "take into consideration the aggregate time of imprisonment" that the Petitioner would be serving as a result his increased offense level, as well as "his subsequent deportation" and requested that Petitioner be sentenced "within the guideline range of 41 to 51 months as estimated in the plea agreement." (*Id.* at 3.) Of note, despite plea negotiations (*see* Opp'n at 1), "[t]he parties did not enter into a plea agreement." (Supp. Opp'n at 1; *see also* Plea Tr. at 5:4-9, 5:18-6:6.)

On March 26, 2015, Petitioner was sentenced to 43 months' imprisonment, below the advisory guideline range, and three years' supervised release. (*See* ECF No. 21 (Mar. 26, 2015 Minute Entry); *see also* ECF No. 23 (Judgment) at 2-3).) At that time, the Court advised the Petitioner of his right to appeal. (*See* Mar. 26, 2015 Minute Entry.) The Court's Judgment was entered later the same day. No notice of appeal was filed within fourteen days of the entry of Judgment. (*See* Case No. 14-cr-389 Docket, *in toto*.)

Rather, in a *pro se* submission dated July 2, 2015, and docketed July 9, 2015, Petitioner filed a Notice of Appeal (*see* ECF No. 24) and a motion requesting to proceed *in forma pauperis*. (*See* ECF No. 25.) Since Petitioner's appeal was untimely, having been filed more than ninety (90) days after the entry of Judgment, the Court "denie[d Petitioner's] motion for leave to appeal *in forma pauperis* as it would not be taken in good faith." (ECF No. 26.)

This Petition followed, being filed on November 12, 2015. Petitioner raised two bases for vacating, setting aside or correcting of his sentence, *to wit*:

> A. Defendant cousel [*sic*] was innefective [*sic*] for failure to move the court for downward departure based on [Petitioner]'s status as a deportable alien.
>
> B. Defense counsel failed to protect [Petitioner]'s appellate rights when [Petitioner] asked him to do appeal.

(Motion at 1.) Responding to the Court's Order to Show Cause why Petitioner's Motion should not be granted (*see* ECF No. 28), on December 12, 2015, the Government filed its response, requesting the Petition be denied on Petitioner's first basis, arguing that "[a] defendant's status as a deportable alien is *not* a basis for a downward departure in a case where the defendant is convicted of illegal reentry" (Opp'n at 2 (emphasis in original)), and that further fact-finding be engaged in as to the second ground. (*See* Opp'n at 4 ("The district court is required to engage in fact-finding to determine if an appeal was requested and may order the filing of affidavits from the defendant and his counsel in lieu of a testimonial hearing." (citations omitted)); *see also* Supp. Opp'n at 2.)

On July 20, 2016, Petitioner's appellate counsel requested she be appointed Petitioner's attorney for purposes of his Motion (*see* ECF No. 32), which request was granted the next day (*see* ECF No. 36). Thereafter, Petitioner's counsel supplemented the Motion, adding a claim under *Johnson v. United States*, 559 U.S. 133 (2010) (hereafter, "*Johnson I*"). (*See* ECF No. 40.) Accepting the supplement, the Court further ordered Petitioner and Chavis to file affidavits addressing the previously-raised argument that Chavis failed to protect Petitioner's appellate rights, and the Government to respond to Petitioner's arguments that Chavis failed to file an appeal upon Petitioner's request and that Petitioner's sentence was improper in light of *Johnson I*. (*See id.*)

4

On January 13, 2017, Petitioner filed his affidavit ("Pichardo Affidavit"). (*See* ECF No. 42.) Among other things, he stated that: (1) before being sentenced, Chavis told him that his "sentencing guidelines range was 46 to 57 months" and he told Chavis "this was too much time" and he "wanted to appeal the time"; and "Chavis said that she would appeal, but first had to see what [Petitioner] was sentenced to" (Pichardo Affidavit, ¶1); and (2) after being sentenced, he "told the interpreter in Spanish that I wanted to appeal the sentence. The interpreter appeared to tell Ms. Chavis this in English. Through the interpreter, Ms. Chavis said not to worry, she would see to it." (*Id.* at ¶2.) He further stated that he "never heard from Ms. Chavis again" so he "wrote to her from the GEO prison" telling Chavis "not to forget about [his] appeal," but "[s]he never wrote back to [Petitioner]." (*Id.* at ¶3.)

On January 20, 2017, Chavis filed her responsive affidavit (hereafter, the "Chavis Affidavit")(*see* ECF No. 43) stating, *inter alia*: that she had more than 35 years of criminal defense experience (*see id.* at ¶1); she had represented Petitioner (*see id.* at ¶2); she had read the Motion and the Pichardo Affidavit (*see id.* at ¶3); "[a]t no time prior to [Petitioner]'s sentencing did he tell [Chavis] he wanted to appeal the forthcoming sentence"; "[a]t the conclusion of his sentencing, [Petitioner] and [Chavis] discussed his understanding that the sentence was below the advisory guideline range as calculated by the Probation Department"; and "[a]t no time did [Petitioner] advise [Chavis] he wished to appeal his sentence." (*Id.* at ¶4.)

On February 24, 2017, the Government filed its response. (*See* Supp. Opp'n.) Petitioner did not file any reply to Chavis' affidavit or the Government's Supplemental Opposition. (*See* Case No. 14-cr-389 Docket, *in toto*.)

III.    Discussion

    *A. Ineffective Counsel*

        1. The Applicable Law

To establish an ineffective e assistance of counsel claim, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness," and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Roberts v. United States*, No. 11-cv-4404 (SJF), 2014 WL 4199691, at *3 (E.D.N.Y. Aug. 22, 2014) (quoting *Strickland*). A court's determination of reasonableness must be based on the facts of the particular case and viewed as of the time of the counsel's conduct in question. *See Flores-Ortega*, 528 U.S. at 477 (quoting *Strickland*, 466 U.S. at 690). Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* (quoting *Strickland*, 466 U.S. at 689)(brackets in *Flores-Ortega*). Further, "a lawyer who disregards *specific instructions* from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477 (citations omitted)(emphasis added).

It is a petitioner's burden of proving, by a preponderance of the evidence, that he instructed his counsel to file a notice of appeal. *See United States v. Harrison*, 48 F. Supp.3d 381, 391 (N.D.N.Y. 2014)(citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)(holding full testimonial hearing not required before deciding federal prisoner's § 2255 motion where record was supplemented with trial counsel's detailed affidavit credibly describing relevant circumstances giving rise to petitioner's ineffective assistance of counsel claim)).

6

> A mere conclusory allegation that a defendant requested an appeal, without more, is insufficient to warrant § 2255 relief. *See, e.g., Scott v. United States*, No. 07-CV-4039, 2011 WL 115087, at *5 (E.D.N.Y. Jan. 13, 2011). "Although the district court is required to engage in fact-finding to determine if an appeal was requested, *Campusano* specifically recognizes that 'the district court has discretion to determine if a testimonial hearing will be conducted' in order to make this finding." *Lopez v. United States*, No. 03-CR-317, 2006 WL 2020389, at *3 (S.D.N.Y. July 12, 2006)(quoting *Campusano*, 442 F.3d at 776). A district court may expand the record to include affidavits or other written submissions to decide disputed facts. *Chang*, 250 F.3d at 86. A court is not required to hold a hearing where both parties have filed affidavits and thus "the testimony of [defendant] and his trial counsel would add little to nothing to the written submissions." *Id*.

*Harrison*, 48 F. Supp.3d at 391; *see also Roberts*, 2014 WL 4199691, at *4-5 (expanding the record to include affidavits in deciding disputed fact of whether petitioner requested his trial counsel to file a notice of appeal).

2. The Present Case

(a.) *Petitioner's Status as a Deportable Alien*

Petitioner asserts that Chavis was ineffective for failing to move the Court for a downward departure based on his status as a deportable alien. (*See* Motion at 1.). This argument is unavailing. First, Chavis did request the Court take into consideration Petitioner's deportable alien status when sentencing him. (*See* Sentencing Memo. at 3.) Second, while the Circuit Court has stated that a defendant's status as a deportable alien may serve as a basis for a downward departure, such a departure in appropriate only in cases that are "extraordinary in nature and degree" and the departure is "based on a factor not considered, in kind or degree, by the [Sentencing] Commission." *United States v. Restrepo*, 999 F.2d 640, 647 (2d Cir. 1993). The Court finds nothing in this case distinguishing it as extraordinary. Moreover, the Guideline employed in this case, a guideline that applies to aliens who are deportable, clearly takes into

7

consideration Petitioner's status as a deportable alien. *See, e.g., United States v. Escobar-Rico*, No. H-07-3424, 2007 WL 3143711, at *5 (S.D. Tx. Oct. 24, 2007)("downward departure based on defendant's deportable alien status is not available because that status is an element of the offense") (collecting cases). Hence, in this regard, there is no basis to find Chavis' representation ineffective.

(b.) *The Alleged Failure to File a Notice of Appeal*

With the record having been supplemented by the Pichardo and Chavis Affidavits, the Court finds it is not necessary to have a full testimonial hearing on Petitioner's ineffective assistance of counsel claim. *See Chang*, 250 F.3d at 86. This conclusion is buttressed by two additional factors: that the undersigned was the sentencing judge and is familiar with this case, *see, e.g., Lopez*, 2006 WL 2020389, at 2 (ruling on a § 2255 petition did not require a hearing where the judge making that ruling had presided over underlying trial court proceedings and had the § 2255 petitioner's affidavit before him); and, that it would be both a waste of judicial resources and futile to schedule an evidentiary hearing in this instance as, according to his current counsel, there is no current contact information for Petitioner.[4] (*See* ECF No. 45 (Letter

---

[4] The Court notes that it is the Petitioner's duty to keep the Court apprised of his contact information. *See, e.g., English v. Azcazubi*, No. 13-cv-5074, 2015 WL 1298654, at *2 (E.D.N.Y. Mar. 20, 2015)("[W]hen a party, even a *pro se* litigant, changes addresses, it is that party's obligation to notify the Court of the new address.")(collecting cases). A review of the Case Docket shows Petitioner's address listed as "555 Geo Drive, Philipsburg, PA," *i.e.*, the Moshannon Valley Correctional Center. (*See* Case No. 14-cr-389 Docket.) Yet, according to his current counsel, Petitioner was released from prison on July 27, 2017; as previously stated, she has no current contact information for him. (*See* ECF No. 45 at 1 ("I have reviewed the Federal Bureau of Prisons inmate locator website which states that [Petitioner] was released on July 27, 2017. I have hear [*sic*] nothing from [Petitioner] since his release and do not have current contact information for him.").) Further, while one of the conditions of Petitioner's supervised release is that he notify his probation officer of any change in residence, there is no indication Petitioner has complied with that condition. (*See* Judgment (ECF No. 23), Standard Conditions of Supervision, ¶6.)

Motion to Withdraw as Counsel) at 1, 2.)  *See also, generally*, *English v. Azcazubi*, No. 13-cv-5074, 2015 WL 1298654, at *2 (E.D.N.Y. Mar. 20, 2015) ("A district court has the inherent power to manage its own affairs 'so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009)(further citation omitted)).

Having reviewed the record, and considering the Pichardo and Chavis Affidavits, the Court finds the Petitioner has not met his burden of proving he instructed Chavis to file a notice of appeal.  Given Attorney Chavis's more than 35 years of criminal defense experience and her unequivocal statements that Petitioner made no requests for an appeal, either before or after sentencing, the Court is unpersuaded by Petitioner's statements to the contrary.  *See, e.g., Kapelioujnyi v. United States*, 779 F. Supp.2d 250, 254 (E.D.N.Y. 2009) (without holding a testimonial hearing, finding trial counsel's unequivocal affidavit more credible than § 2255 petitioner's equivocal affidavit, ruling petitioner did not direct his attorney to file an appeal).  Clearly, they are self-serving in nature and, without more, Petitioner's statements that he "wanted to appeal" is not sufficiently persuasive that he specifically directed Chavis to file an appeal.  Moreover, because the Petitioner knew at the time of his guilty plea that he could receive a sentence of 41 to 51 months, as estimated by the Government in its proposed Plea Agreement (*see* Plea Tr. at 5:18-25), and because he received a sentence in that range, *i.e.*, 43 months' imprisonment, which was below the Sentencing Guideline range of 46 to 57 months calculated by the Probation Department and discussed by Chavis with Petitioner both before and after his sentencing, it is difficult to credit Petitioner's claim that he directed Chavis to appeal his sentence as being too much time.  Similarly, Petitioner's assertion that he wrote Chavis to "not forget about [his] appeal" is specious given its vagueness; certainly, providing a copy of the letter, or even indicating the date of the alleged communication, would have lent some credibility

9

to this contention. Yet, no such corroborating evidence was presented. Thus, since Petitioner's failure-to-file claim is based solely on his assertion that Chavis ignored his "want[ing] to appeal", but the circumstances of this case belie that assertion, Petitioner cannot sustain his ineffective assistance of counsel claim on this basis.

    B. *Petitioner's Sentencing in Light of the <u>Johnson</u> Cases*

        1. <u>The *Johnson* Cases, Generally</u>

In *Johnson I*, 559 U.S. 133 (2010), the Supreme Court interpreted the so-called Force Clause of the Armed Career Criminal Act, § 924(e) ("ACCA"), *see* 18 U.S.C. § 924(e)(2)(B)(i), pursuant to which a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony,' which is defined as "any crime punishable by imprisonment for a term of one year . . . that," among other things, "(i) has an element of the use, attempted use, or threatened use *of physical force* against the person of another . . . ." (Emphasis added.) At issue was the meaning of the phrase "physical force". *See id.* at 138. The Supreme Court concluded that it was not enough that the force in the underlying violent felony conviction be the slightest offensive touching, as would satisfy the common-law definition of battery. *See id.* at 139. Rather, it held that "'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original).

Five years later, in *Johnson II*, the Supreme Court interpreted a different sub-paragraph of the ACCA, *i.e.*, the so-called Residual Clause, *see* 18 U.S.C. § 924(e)(2)(B)(ii), pursuant to which "a felon in possession of a firearm [would] face[] more severe punishment if he ha[d] three or more previous convictions for a 'violent felony,' a term defined to include any felony that '*involves conduct that presents a serious potential risk of physical injury to another*.'" 135

S. Ct. 2551, 2555 (2015) (defining the emphasized language as the Residual Clause) (emphasis added). The Court found that because of its vagueness, the Residual Clause denied such a felon due process and was, therefore, unconstitutional. *See id.* at 2557, 2563 (holding the Residual Clause "both denies fair notice to defendants and invites arbitrary enforcement by judges" thereby rendering it unconstitutionally vague).

However, in *Beckles v. United States*, the Supreme Court held that the Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause. *See* 137 S. Ct. 886, 892 (2017); *see also id.* at 894 ("Because they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge.") The focus of *Beckles* was the residual clause in the Career Offender Guideline, *i.e.*, Guideline § 4B1.2(a). Notably, the wording of that residual clause, *i.e.*, "or otherwise involves conduct that presents a serious potential risk of physical injury to another", is substantially similar to the residual clause found in the definition of "crime of violence" in Application Note 1(b)(iii) to the Illegal Entrant Guideline, *i.e.*, "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another".

2. The Present Motion

Petitioner contends that "New York robbery in the first degree [of which Petitioner was previously convicted] can be committed without the use or threatened use of violent force;" indeed, it "can [even] be committed by an armed person who never uses, threatens to use, or displays a weapon," thereby not encompassing the violent force identified in *Johnson I*. (Supplemental Motion at 2.) Therefore, Petitioner posits that his prior conviction for NY 1st Degree Robbery should not have been used as a basis to increase his base offense level by 16 levels. (*See id.* at 1, 2.) The Government objects to Petitioner's arguments, stating that his "New

York State robbery conviction qualifies as a 'crime of violence' under two separate and independent bases within U.S.S.G. § 2L1.2(b)(1)(A): specifically, under both the Application Note's Enumerated Offenses Clause and Force Clause." (Supp. Opp'n at 4.)

Indeed, Petitioner acknowledges that in the PSR his offense level was increased by 16 levels pursuant to § 2L1.2(b)(1)(A) of the Sentencing Guidelines based on his NY 1st Degree Robbery conviction. (*See* Supplemental Motion at 1.) He also concedes that the definition of "crime of violence" is identical in the ACCA's Force Clause, examined by the *Johnson I* Court, and in Application Note 1(b)(iii) to the Illegal Entrant Guideline. (*See id.* at 1-2.)

The Second Circuit has recently "held that New York robbery in any degree is a crime of violence because it has as an element the use of force." *United States v. Johnson*, No. 16-3999-cr(L), 2019 WL 2167127, --- F. App'x --- at 2 (2d Cir. May 20, 2019) (citing *United States v. Pereira-Gomez* 903 F.3d 155, 165 (2d Cir. 2018)("By its plain language, . . . New York's robbery statue includes as an element the use of violent force.")). Relatedly, in *United States v. Jones*, 878 F.3d 10, 16-17 (2d Cir. 2017), the Circuit Court concluded that a NY 1st Degree Robbery conviction is a crime of violence under the Residual Clause of Guideline § 4B1.2, the Career Offender Guideline, stating, *inter alia*, that if there were any misgiving regarding its conclusion that NY 1st Degree Robbery is a crime of violence, such misapprehension was negated by the corresponding commentary to the Career Offender Guideline, which specifically enumerated robbery as a crime of violence. *See id.* at 17 and n.4 (noting that the commentary to the Career Offender Guideline specifically included robbery as a "crime of violence"). There is no reason that the same conclusion should not apply in the instant matter since "[c]ommentary provisions must be given 'controlling weight' unless they: (1) conflict with a federal statute, (2) violate the Constitution, or (3) are plainly erroneous or inconsistent with the Guidelines

provisions they purport to interpret." *Id.* at 18 (citation omitted). Petitioner has not identified any such flaws nor does the Court discern any.

The definition of "crime of violence" found in the commentary to the Unlawful Entrant Guideline, §2L1.2, *see* Application Note 1(B)(iii), specifically enumerates "robbery", just as the commentary to the Career Offender Guideline does. Thus, since the *Jones* Court "easily conclude[d] that New York's definition of robbery necessarily falls within the scope of generic robbery as set forth in the commentary to [the Career Offender Guideline]," 878 F.3d at 19, that same conclusion should apply to the "robbery" included in the "crime of violence" definition set forth in the commentary to the Illegal Entrant Guideline. Nothing in the Supreme Court's *Johnson* cases changes this conclusion.

In sum, the *Johnson* cases do not provide Petitioner with a basis to challenge either the 16-level enhancement of his base offense level under the Guidelines or the ultimate sentence imposed upon him.

\* \* \*

The Court has considered the Petitioner's remaining arguments and finds them to be without merit.

IV. <u>Conclusion</u>

Accordingly, failing to present any basis upon which to vacate, set aside or correct his sentence, IT IS HEREBY ORDERED that Petitioner's Motion is **denied**. The Court declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c).

IT IS FURTHER ORDERED that the motion of Petitioner's current counsel, Attorney Mary Anne Wirth, to withdraw as counsel (*see* ECF No. 45) is **granted**.

The Clerk of Court is directed to close this case.

SO ORDERED this 22nd day of May 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge